**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| BARBARA M. PARMENTER, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br>TUFTS UNIVERSITY, and DOES 1-50<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 1:22-CV-10079-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The Prudential Insurance Company of America ("Prudential" or the "Company") submits this brief in support of its motion to dismiss the complaint in its entirety as to Prudential.

The gravamen of Plaintiff's purported class action complaint is that Prudential required approval from the Massachusetts Insurance Commissioner (the "Commissioner") prior to increasing premiums on Plaintiff's long term care policy. As alleged by Plaintiff, in failing to obtain the Commissioner's permission, Prudential violated the Employee Retirement Income Security Act of 1974 ("ERISA") and the governing group insurance contract (the "Group Contract" or the "Plan"), applicable to Plaintiff and similarly situated policyholders. Apart from her naked allegations, Plaintiff's claims are devoid of any merit as: (i) Plaintiff has not alleged that Prudential is a fiduciary, or that ERISA precludes increasing her premiums; (ii) the Group Contract governing Plaintiff's claims expressly provides that long term care policyholders are subject to premium increases within specified ranges; and (iii) the Commissioner has declined to regulate

1

long term care policy premium increases involving policies governed by the Group Contract. For each of these reasons, Plaintiff's complaint should be dismissed with prejudice.

Prudential provides a long term care insurance policy to Plaintiff under a group contract available to employees of Tufts University ("Tufts"). Plaintiff's Group Contract expressly authorizes the Company to increase her insurance premiums and fully discloses the range of potential increases. Plaintiff nevertheless contends that Prudential is precluded from increasing her premiums based on an erroneous interpretation of the Group Contract terms. Citing a contractual reference to approval by the Commissioner, Plaintiff illogically argues that the Company can never increase premiums in a state like Massachusetts, where the Commissioner has chosen *not* to regulate premium rate increases for group long term care policies like Plaintiff's. Plaintiff's nonsensical position should be rejected by this Court.

Plaintiff does not allege that Prudential violated any state insurance laws or regulations, because it has not. Instead, she erroneously contends that ERISA requires Prudential to obtain the Commissioner's "approval" for each premium rate increase, even though the Commissioner allows premium rate increases to be implemented by insurance carriers without requiring that approval. This specious argument is contrary to the Massachusetts insurance regulatory regime and the language of the Group Contract. ERISA imposes no such requirement, and Plaintiff has not pled the requisite elements of her breach of fiduciary duty claim, including:

*First*, Plaintiff does not identify the factual basis for her assertion that Prudential acted as an ERISA fiduciary. If she contends that Prudential breached its ERISA fiduciary duties when it raised premium rates, that claim must fail because Plaintiff has not identified any fiduciary duties breached by the premium increases. Indeed, Prudential does not have any such fiduciary duties because an insurer's business decisions are not fiduciary acts. If her claim instead concerns

marketing of the policy, it still fails because insurers are not acting as ERISA fiduciaries when marketing an insurance product.

*Second,* Plaintiff does not allege any conduct by Prudential that would constitute a breach of any ERISA fiduciary duty.

*Third*, Plaintiff does not plead detrimental reliance on any statements by Prudential, or that she suffered (or may suffer) any loss or injury as a result of any action by Prudential. She does not allege that she relied on — or even read — the language she now cites to support her claim. Moreover, Plaintiff could not reasonably have understood — nor relied on — any alleged misrepresentation to mean that Prudential could not ever raise premium rates, because the Group Contract expressly grants Prudential the right to change premium rates and discusses the possibility of rate increases of up to 200%. Plaintiff also does not, and cannot, identify any economic loss she purportedly suffered. By her own admission, she is receiving all of the benefits the Plan provides a participant in her specific circumstances.

Because Plaintiff has failed to plead the necessary elements of a breach of fiduciary duty claim, including failing to even identify any fiduciary duties owed by Prudential, and it is plain from the face of her complaint that she cannot, the Court should dismiss her complaint in its entirety and with prejudice.

## FACTUAL BACKGROUND

Tufts offered the Plan, a long term care insurance plan, to its employees through Prudential. Dkt. 1, Complaint ("Compl."), ¶ 10. Tufts is the Plan's named administrator, Compl. ¶ 7, while Prudential pays the insurance benefits provided in the Plan, *id.* at ¶ 9. As an insurance plan offered through an employer, the Plan is subject to both state insurance laws and federal ERISA regulations. *See Andrews-Clarke v. Lucent Techs., Inc.,* 157 F. Supp. 2d 93, 103–06 (D. Mass. 2001).

The Plan's terms are set forth in the Group Contract, which Plaintiff attaches to her complaint.  *See* Dkt. 1-1, Group Contract.  The Group Contract describes Prudential's role: it handles billing, determines benefits eligibility, handles the claim appeals process, and coordinates payments for services.  *Id*. at 10, 13, 19-20, 31, 34-35.  Prudential collects insurance premiums from Tufts employees who elect coverage under the Plan.  *See id.* at 12-13.  Under the Group Contract, "Coverage" is the long term care insurance on an eligible insured. *Id.* at 38.

Long term care insurance, like that offered through the Plan, covers the future costs of long term care associated with an individual's chronic condition or disability.  Kirsten J. Colello, Cong. Rsch. Serv., IF11614, *Long-Term Care Insurance: Overview* (2020), at 1.  Long term care may be necessary if a person becomes unable to perform everyday activities or care for themself safely.  Group Contract at 5.  Services covered under the Plan include services provided in a person's home, community, or nursing home to assist with basic activities of daily living, but not those provided in an acute care hospital.  *Id.* at 6, 36-37.  The Plan pays the actual cost of covered services in full, up to various maximum amounts.  *Id.* at 8-9, 15-19.  Thus, as the cost of these services increases, the cost to Prudential of providing coverage under the Plan also increases.

As with health insurance generally, it is common for long term care insurance premiums to increase over time.  In addition to ongoing increases in the cost of providing care, the long projection period required by a long term care plan combined with evolving medical practices and diagnoses, changes in access to home care services and assisted living facilities, and increased life expectancies makes periodic premium increases necessary.  *See* Am. Acad. of Actuaries, *Understanding Premium Rate Increases on Private Long-Term Care Insurance*, (June 2016), https://www.actuary.org/content/understanding-premium-rate-increases-private-long-term-care-insurance (listing factors affecting changes in premium rates for long term care insurance and

4

stating that "[i]f not for the ability to adjust premiums to better reflect actual experience, carriers would not have offered this type of insurance product.").

Regulation of long term care insurance varies significantly from state to state. Contrary to Plaintiff's allegation, in Massachusetts, the Commissioner has the authority to regulate long term care policies, including premium rate increases. By statute, the Commissioner can "promulgate rules and regulations" related to long term care insurance plans. *See* Mass. Gen. Laws ch. 176U § 7(a) (2013). The Commissioner has specific statutory authority to regulate premium rate increases. *See id.* § 7(c) (providing Commissioner authority to initiate a hearing on proposed long term care policy rate increases). However, to date, the Commissioner has not exercised that authority to regulate premium rates for employer-sponsored *group* plans, like the Plan. *Cf.* 211 Mass. Code Regs. 65.07 (2005) (setting forth procedure for filing of premium rates for individual plans). Instead, the Commissioner has chosen to regulate only individual long term care premiums. *See* Mass. Div. of Ins., https://www.mass.gov/service-details/long-term-care-insurance-rate-increase-questions-and-answers (last visited Apr. 1, 2022). As a result, in Massachusetts, group policies "are not subject to most state insurance requirements." Mass. Div. of Ins., *Glossary of Common Long-Term Care Expressions*, https://www.mass.gov/service-details/glossary-of-common-long-term-care-expressions (last visited Apr. 1, 2022).

The Group Contract makes clear that premiums are not fixed, and have the potential to increase substantially over time. The Group Contract has a section entitled "Premiums." Group Contract at 12.[1] Section C of the "Premiums" section is titled "Increase in Premiums." *Id.* at 6,

---

[1] On a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, courts may consider documents attached to or submitted with the complaint. *Goodwin as Tr. of IUE-CWA Pension Fund v. Marland Mold,* No. CV 18-11637-MGM, 2021 WL 1139665, at *5 (D. Mass. Mar. 18, 2021); *Lombardo v. CitiMortgage, Inc.,* No. CV 18-10299-PBS, 2019 WL 3546630, at *1 (D. Mass. Mar. 4, 2019). In ERISA cases, courts may also consider plan

12. The first sentence of that section states: "*Prudential* . . . reserves the right to change premium rates." *Id.* at 12 (emphasis in original). The Group Contract also explains the options available to Plan participants in the event of a "Substantial Premium Increase." *Id.* at 28. It provides a "Substantial Premium Increase Table" that shows potential increases ranging from 200% for participants under 30 to 10% for those 90 and over. *Id.* at 28-29. Participants who do not wish to pay increased premiums have the option of declining the increase in exchange for reducing the maximum benefit they may receive under the policy. *Id.* at 28-29. The Foreword of the Group Contract states that Prudential "may increase the premiums you pay subject to the approval of the Massachusetts Commissioner of Insurance" and "may change the provisions of the Coverage to conform with changes in any state or Federal law or regulation that applies to this Coverage." *Id.* at 2.

Plaintiff Barbara Parmenter is a former Tufts employee who opted to purchase a long-term care insurance policy through the Plan. Compl. ¶¶ 6-7. Plaintiff was required to pay Prudential annual premiums for this insurance. Group Contract at 12. She alleges that Prudential notified her in 2019, and again in 2020, that her premiums would increase. Compl. at ¶¶ 20, 23. She further alleges that, in 2019, she accepted the premium increase, and in 2020, she exercised a non-forfeiture option in her policy "in order to avoid paying future premiums in exchange for a greatly reduced maximum benefit under her policy." *See id.* at ¶¶ 20-23.

Plaintiff alleges that Prudential "incorrectly marketed" her policy "as needing rate approval from regulators" and "promised that it could only increase premium rates in the future 'subject to the approval of the [Massachusetts] Commissioner of Insurance.'" *Id.* at ¶¶ 16, 19. She alleges

---

documents. *Kling v. Fid. Mgmt. Tr. Co.*, 270 F. Supp. 2d 121, 128 (D. Mass.), *review granted in part, decision modified*, 291 F. Supp. 2d 1 (D. Mass. 2003).

that Prudential nevertheless increased the premiums, even though such approval was not required or available under Massachusetts' insurance regulatory scheme. *Id.* at ¶¶ 2, 3, 17. Plaintiff further alleges that Prudential made similar statements to policy holders in other states, and seeks to certify a class of similarly situated ERISA plan participants. Compl. ¶ 25.

## ARGUMENT

The Court should dismiss Plaintiff's claim against Prudential for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, Plaintiff must plead facts that "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausible "means something more than merely possible." *Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012). Plaintiff must therefore allege sufficient facts that allow a court to "infer more than the mere possibility of misconduct" and support a "reasonable inference that the [defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. If the facts alleged are merely *consistent* with liable acts, then the complaint "stops short of the line between possibility and plausibility" and dismissal is proper. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). To assert a successful claim for a breach of fiduciary duty, Plaintiff must plead facts suggesting that Prudential is a fiduciary, that it breached its fiduciary duties, and that its breach resulted in a loss. *See* 29 U.S.C. § 1109; *Brotherston v. Putnam Invs., LLC,* 907 F. 3d 17, 30 (1st Cir. 2018). To establish a breach via a misrepresentation, Plaintiff must also allege detrimental reliance. *Kenney v. State St. Corp.*, 754 F. Supp. 2d 288, 292 (D. Mass. 2010).

Plaintiff fails to meet this standard. She fails to plead that Prudential was acting as a fiduciary when making the alleged misrepresentations, and does not plausibly allege that she reasonably relied on Prudential's alleged misrepresentations, or experienced a loss caused by any alleged breach. Accordingly, Plaintiff's complaint should be dismissed.

7

**I.      Plaintiff Does Not Adequately Allege That Prudential Had Fiduciary Status Or That It Breached Its Fiduciary Duties.**

As a threshold matter, Plaintiff's claim fails because she does not allege that Prudential was a Plan fiduciary, that Prudential had any specific fiduciary duties, or that Prudential was acting in a fiduciary capacity when it engaged in the conduct she alleges was a fiduciary breach.

Fiduciary status under ERISA can be created in two ways. First, a fiduciary may be named "in the plan instrument." 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1105(c)(1). Plaintiff does not allege that Prudential is a named fiduciary. *See generally* Compl. Alternatively, a party can become a "functional" fiduciary through its conduct:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

To plead that Prudential is a functional fiduciary, it is not enough for Plaintiff to allege that Prudential had some fiduciary responsibilities with respect to the Plan because, under ERISA, a party is a fiduciary only "to the extent" the party engages in fiduciary acts. *See id*. That is, a party may be an ERISA fiduciary when performing certain tasks, but not when performing other tasks. *See Pegram v. Herdrich*, 530 U.S. 211, 225-26, 231-32 (2000). An ERISA fiduciary "may wear different hats" and act in its own interest when not "wear[ing] the fiduciary hat." *Id*. at 224-25. This "two hats" framework is most commonly applied to employers, but it extends to all "persons who provide services to an ERISA plan." *Id.* at 225. Accordingly, in assessing a claim for breach of fiduciary duty, "the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Id.* at 226 (emphasis added).

Despite alleging that she is entitled to relief "due to the fiduciary breach committed by Prudential" Compl. ¶ 24, Plaintiff fails to identify the specific conduct that constitutes Prudential's alleged breach. It appears from her allegations that it is either Prudential's actual raising of her premiums, or Prudential's alleged misrepresentation that any premium rate increases were subject to the approval of the Commissioner. Neither alleges a breach of fiduciary duties Prudential owes to Plaintiff.

Insurers who provide benefits to ERISA plan participants are not automatically ERISA fiduciaries for all purposes. Setting premiums is a quintessential business decision by Prudential. And business decisions related to rates and compensation fall outside of fiduciary discretion. *See Merrimon v. Unum Life Ins. Co. of Am.,* 758 F.3d 46, 60 (1st Cir. 2014) (explaining that "setting of the interest rate . . . did not implicate any ERISA-related fiduciary duty"). "General fiduciary duties under ERISA are not triggered when the decision at issue is, at its core, a corporate business decision, and not one of a plan administrator." *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) (Summ. Order) (quoting *Am. Psychiatric Assoc. v. Anthem Health Plans, Inc.,* 821 F.3d 352, 357 n.2 (2d. Cir. 2016)) (internal markings and quotations omitted).[2]

Nor does an insurer act as a fiduciary when it markets an insurance product. *See Depot, Inc. v. Caring for Montanans, Inc.,* 915 F.3d 643, 655 (9th Cir. 2019) (explaining that

---

[2] Some courts have held than an insurer who has discretion over fees paid to it out of ERISA plan assets may be acting as a fiduciary. *See, e.g.*, *Charters v. John Hancock Life Ins. Co.,* 583 F. Supp. 2d 189, 197 (D. Mass. 2008) (holding that an insurance company "is a fiduciary because the Contract gave it discretionary authority to determine the amount of its compensation" paid from plan assets). Here, Plaintiff alleges she pays her insurance premiums from her own assets, not that they are paid by the Plan. *See* Compl. ¶¶ 4, 23. Decisions that relate to the out-of-pocket costs plan participants pay in connection with insurance provided through an ERISA plan are not fiduciary in nature. *See, e.g., Depot, Inc. v. Caring for Montanans, Inc.,* 915 F. 3d 643, 659 (9th Cir. 2019); *In re Express Scripts/Anthem ERISA Litigation* 285 F. Supp. 3d 655, 683 (S.D.N.Y. 2018), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020).

misrepresentations that occurred when policies were being marketed were not made in fiduciary capacity). "Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). "The mere marketing of the [ ] plan does not implicate fiduciary conduct." *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991). Indeed, "ERISA fiduciary duties do not govern the distribution of marketing materials to potential plan participants." *Weiss v. CIGNA Healthcare, Inc.,* 972 F. Supp. 748, 753 n.4 (S.D.N.Y. 1997).

Here, Plaintiff has not alleged any facts to support her assertion that Prudential acted as a fiduciary to the Plan. She alleges only that Prudential is the insurer of the Plan, Compl. ¶ 9, and that she is entitled to relief "due to the fiduciary breaches committed by Prudential," Compl. ¶ 24; *see also id.* at *¶* 39. This is not enough. *See Morjaria v. Harvard Vanguard Med. Assocs., Inc.*, No. CIV.A. 14-10139-GAO, 2015 WL 1276827, at *4 (D. Mass. Mar. 20, 2015) (dismissing ERISA claims when the "complaint fails to allege specific facts that would establish Aetna's fiduciary status under the plaintiff's Plan"); *Columbia Air Servs., Inc. v. Fid. Mgmt. Tr. Co.*, No. CIV.A. 07-11344-GAO, 2008 WL 4457861, at *5 (D. Mass. Sept. 30, 2008) (dismissing ERISA claim when the plaintiff "fails to allege facts supporting the claim that [defendant] acted as a fiduciary [for] the purposes named in the complaint"); *see also Spalding v. Reliance Standard Life Ins. Co.*, 835 F. Supp. 23, 31 (D. Mass. 1993) (finding for defendants when plaintiff offered only "a cursory allegation that defendant breached its fiduciary duty").

To the extent Plaintiff challenges Prudential's decision to increase her premiums, Plaintiff also fails to identify any conduct that could constitute a fiduciary breach because she does not plausibly allege that Prudential's conduct was inconsistent with the terms of the Group Contract. Plaintiff relies on Group Contract language that expressly permits the Company to increase

premiums, subject to the Commissioner's approval. The Commissioner has declined to place *any* restrictions on those premium increases for group long term care policies like Plaintiff's. So Plaintiff advocates for the illogical position that the phrase "subject to the approval of the [Commissioner]" means the Commissioner's decision *not to regulate premiums* means the Company is *precluded* from ever raising them. Plaintiff's reading simply does not hold up. Absent regulatory action by the Commissioner, the plain language of the Group Contract imposes no limitation on raising premiums — and in fact, makes clear that there is none. *See, e.g.,* Group Contract at 28-29 (illustrating potential increases greater than those alleged by Plaintiff).

Plaintiff's contention that Prudential was acting in a fiduciary capacity when it allegedly "incorrectly *marketed the impacted policies* as needing rate approval from regulators" is equally unavailing. Compl. ¶ 19 (emphasis added). Plaintiff does not allege facts that support the conclusion that Prudential was acting as a Plan fiduciary in creating these unidentified marketing materials, and courts have held that insurers are not acting as fiduciaries when marketing their products. *See Depot, Inc.,* 915 F.3d at 655; *Cotton*, 402 F.3d at 1278; *Consol. Beef*, 949 F.2d at 965; *Weiss,* 972 F. Supp. at 753 n.4; *see also Ehlen Floor Covering, Inc. v. Lamb*, No. 207CV666FTM29DNF, 2012 WL 12960581, at *6 (M.D. Fla. Apr. 23, 2012) (finding an insurer is not an ERISA fiduciary when marketing its products). Therefore, any representations Prudential is alleged to have made while marketing the Plan cannot form the basis of a breach of fiduciary duty claim.

Plaintiff's failure to allege facts to support the notion that Prudential acted as a fiduciary when engaged in the business actions she challenges, or that those actions breached any fiduciary duty Prudential owed her, warrants dismissal.

## II. Plaintiff Has Not Plausibly Alleged That She Relied On Alleged Misrepresentations To Her Detriment, Or Otherwise Suffered A Loss.

Even if Plaintiff had adequately alleged a fiduciary breach by Prudential — which she has not — her claim would still fail due to her failure to adequately allege that she has suffered a loss. To survive Prudential's motion to dismiss, Plaintiff must plead that a fiduciary breach by Prudential caused her to suffer a loss. *See* 29 U.S.C. § 1109; *Brotherston,* 907 F. 3d at 30. Indeed, a person cannot recover under ERISA, even if there has been a breach of fiduciary duty, unless the person suffered a loss. *See Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir. 1997) (plaintiffs are not entitled to recovery of damages for a breach "absent proof of an actual economic loss"). For example, in *Mira*, the plaintiff's employer diverted premium payments for her health insurance for other purposes, but her breach of fiduciary duty claim failed because her benefits were ultimately reinstated and she received all of the coverage she was entitled to under her policy, so she suffered no actual loss. 107 F.3d at 472-73.

To establish that Prudential breached its fiduciary duties under ERISA by misrepresenting information about the Plan, Plaintiff must also plausibly allege that the misrepresentation was material, that she relied on the alleged misrepresentation, and that such reliance was to her detriment. *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 459 (3d Cir. 2003); *see also Mauser v. Raytheon Corp. Pension Plan*, 239 F.3d 51, 54-55 (1st Cir. 2001). Plaintiff must show that she individually *relied* on the misrepresentation in order to bring a successful claim for a breach of fiduciary duty. *Kenney*, 754 F. Supp. 2d at 291 (requiring plaintiff to prove detrimental reliance on the misrepresentations on which he bases his breach of fiduciary duty claim); *see also Mauser*, 239 F.3d at 55 ("[R]elief is only appropriate if the participant demonstrates significant or reasonable reliance on the" alleged misrepresentation.). Thus, even when a plaintiff's plan benefits have been reduced, there is no viable claim for breach of fiduciary duty unless there is a causal

connection between the reduction and the alleged misrepresentation. *See Kenney*, 754 F. Supp. 2d at 291; s*ee also Mauser*, 239 F. 3d at 54-55 (holding plaintiff failed to show detrimental reliance because he could not reasonably have relied on alleged misrepresentations in making decisions resulting in reduced pension benefits).

Here, Plaintiff has not alleged that she suffered any loss of Coverage under the Plan, or relied to her detriment on any alleged misrepresentations. Plaintiff alleges that she has been injured by exercising a "non-forfeiture provision to avoid a [premium increase] in consideration of substantially limiting the value of benefits under the policy" and by paying premium rates "that have not been approved by government regulators."[3] Compl. ¶ 4. Neither is sufficient to sustain her breach of fiduciary duty claim.

First, Plaintiff's decision to utilize the non-forfeiture provision in the Group Contract is not a cognizable loss under ERISA, because Plaintiff is receiving the Coverage she is entitled to receive under the Plan, as long as she pays the full premium rates set by Prudential. *See generally,* Group Contract. Plaintiff alleges that she initially paid these full premiums, and later elected not to pay them, exercising her option to stop paying premiums in exchange for a lower lifetime maximum benefit. Compl. ¶ 23. All of this is expressly provided for in the Group Contract. Therefore, because Plaintiff is entitled to Coverage exactly as the Plan provides, she has not suffered an actionable loss as a result of Prudential's alleged breach. *See Mira,* 107 F.3d at 473.

Second, Plaintiff does not allege that she relied on Prudential's alleged misrepresentations, or explain how any reliance was to her detriment. Plaintiff references two alleged misrepresentations. Compl. ¶¶ 16, 19. First, she vaguely alludes to misrepresentations in

---

[3] Plaintiff also alleges that other Plan participants were injured because they "allowed their policies to lapse" rather than pay increased premiums, Compl. ¶ 4, but does not allege that she did so.

13

marketing materials. *Id.* at ¶ 19.  Second, Plaintiff recites the language in the Foreword of the Group Contract that Prudential "may increase the premiums you pay subject to the approval of the Massachusetts Commissioner of Insurance."  Group Contract at 2.  But her complaint is wholly lacking any allegation that she reasonably relied on either alleged representation to her detriment.

Plaintiff has not plausibly alleged reliance on the vaguely-referenced "marketing materials," because she does not identify what statements were made in them, or when or whether she received or read them.  *See generally* Compl.  She does not allege what, if any, significance having the Commissioner's approval of rate increases held for her, or how her understanding may have influenced her decision to enroll in coverage under the Plan.  *See generally id.*  Thus, Plaintiff has not pled that she reasonably relied on these unidentified marketing materials in her decision to purchase insurance under the Group Contract.  Plaintiff also does not allege that she relied on the marketing materials when deciding to continue purchasing coverage under the Plan after rates were increased, or in deciding to exercise the non-forfeiture provision.

Similarly, Plaintiff does not allege when she first saw the language in the Foreword of the Group Contract, or whether it was before or after she decided to enroll in coverage under the Plan, pay premiums, or exercise the non-forfeiture provision.  In fact, she does not even allege that she ever read the Group Contract.  And Plaintiff could not have relied on any representation in the Group Contract to mean that Prudential could never raise premium rates — the interpretation she now advocates — because the Group Contract clearly states that it can: "*Prudential* also reserves the right to change premium rates."  Group Contract at 12.  It specifically discusses the possibility of a "Substantial Premium Increase," and lists percentages of possible increases ranging from 10% to 200%.  Plaintiff alleges that the increase she experienced in 2019 was 40%.[4]  Thus, Plaintiff's

---

[4] Plaintiff does not identify the amount of the alleged rate increase in 2020.

14

suggestion that she could have relied on a sentence in the Foreword to mean that rates could not be increased within a range expressly discussed elsewhere in the Group Contract is implausible.

Finally, even if Plaintiff could allege that she reasonably relied on a representation that premiums would only be increased if the Commissioner chose to affirmatively review and approve them — which she has not — Plaintiff fails to allege that she was injured by that reliance. Plaintiff's allegations demonstrate that she opted to pay for long term care coverage even once she knew that Prudential could raise premiums without the Commissioner's affirmative approval. Plaintiff alleges that she chose to continue paying for coverage under the Plan even after she learned that the Commissioner did not approve premium increases, and even after she knew the amount of the increases. *See* Compl. ¶¶ 20-23. A 40% premium increase would not have cost her less if the Commissioner had approved it. Because Plaintiff has not alleged any way in which she relied on Prudential's alleged misrepresentations to her detriment, or that she suffered any loss, her breach of fiduciary duty claim must fail.

## CONCLUSION

For the foregoing reasons, Prudential respectfully submits that the complaint should be dismissed in its entirety as to Prudential.

        Respectfully submitted,

        THE PRUDENTIAL INSURANCE
        COMPANY OF AMERICA,

        By its attorneys,

        */s/Jonathan I. Handler*
        Jonathan I. Handler (BBO#561475)
        jihandler@daypitney.com
        DAY PITNEY LLP
        One Federal Street, 29th Floor
        Boston, MA 02110
        T: (617) 345-4600
        F: (617) 345-4745

        Amanda Amert (pro hac vice admission pending)
        Erica Spilde (pro hac vice admission pending)
        WILLKIE FARR & GALLAGHER, LLP
        300 North LaSalle Drive
        Chicago, IL 60654-3406
        Telephone: (312) 728-9010
        Facsimile: (312) 728-9199
        aamert@willkie.com
        espilde@willkie.com

April 11, 2022

## **CERTIFICATE OF SERVICE**

    I, Jonathan I. Handler, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 11, 2022.

        */s/Jonathan I. Handler*
        Jonathan I. Handler