## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA M. PARMENTER, individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, TUFTS UNIVERSITY, and DOES 1-50 | ) CASE NO. 1:22:cv-10079-RGS ) ) ) ) |
| Defendants. | ) |

## FIRST AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION

1. Barbara M. Parmenter ("Ms. Parmenter" or "Plaintiff"), individually and as a representative of a Class[1] of similarly situated individuals, complain and allege against Defendant The Prudential Insurance Company of America ("Prudential") and Defendants employee benefit plans fully insured by Prudential including Tufts University and Does 1-50 (collectively "Defendants"), violated the Employee Retirement Income Security Act of 1974 ("ERISA"), and the Secretary of Labor ERISA claim regulations.[2]

2. Prudential sold group long-term care insurance plans nationwide representing to the insureds and plan participants that premium rates could only be increased if first approved by the state "Commissioner of Insurance." Prudential knew, or should have known, that in certain states such as Massachusetts, at the time the plans were first sold

---

[1] The capitalized term "Class" used throughout is defined below under the "CLASS ALLEGATIONS" header.
[2] The allegations made in this First Amended Class Action Complaint are based upon information and belief, and the evidence gathered to date by Plaintiff and counsel.

and as of the date of this First Amended Complaint, the insurance regulations did not provide for the Commissioner of Insurance to exercise rate approval authority over group long-term care insurance premiums.

3. Despite promising insureds in their plan language that Prudential would increase premiums only if approved by a state insurance regulator, Prudential increased rates for insureds without first securing governmental approval for premium rate increases in unregulated states, including Massachusetts. This violates the express terms of the plans.

4. Plaintiff, and the Class, have been injured by Defendants' conduct in at least three ways. Plaintiff and the Class have: (1) paid premium increases that have not been approved by government regulators in violation of plan terms; or (2) have allowed their coverage to lapse for failing to pay premiums after Prudential levied increases that were never approved by government regulators; or (3) exercised a non-forfeiture provision to avoid a premium increase thereby substantially limiting the value of benefits available under the plans, or a combination of these three injuries.

5. If Defendants had acted lawfully under ERISA and in accordance with the terms of the insurance contracts and benefit plans, Plaintiff and the Class members' rates would not have experienced increased premiums or other losses while their premium rates remained unregulated.

6. If Prudential wants to raise rates on these group long-term care insurance policies, Prudential needs to wait until the rates are subject to regulatory oversight, in accordance with the policies' terms. If Prudential wanted to raise rates without any regulatory limitation, it could have drafted the policies that way in the unregulated states, but it did not.

## PARTIES

7. Plaintiff Barbara M. Parmenter is an individual residing in Boston, Suffolk County, Massachusetts. Ms. Parmenter is a citizen of Massachusetts.

8. Defendant Tufts University is a Massachusetts not-for profit entity domiciled in Medford, Middlesex County, Massachusetts.

9. Defendants Does 1-50 represent the other yet to be identified Plan Sponsors who contracted with Prudential to provide group long-term care insurance to their employees, insureds and other plan participants, and whose home state insurance commissioner had no group rate approval authority at the time that Prudential increased rates on Class members or did not otherwise approve premium increases. Does 1-50 can be identified after a review of Prudential's records, including, United States Department of Labor form 5500s, policy forms, dates and locations of sales, and history of rate increases.

10. Defendant The Prudential Insurance Company of America is the insurer of the group long-term care insurance policy purchased by Ms. Parmenter and the Class. Prudential is domiciled in New Jersey and is a citizen of New Jersey. Prudential is authorized to engage in the business of insurance in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

12. Venue is proper under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) and (c), because

   a. Tufts University is a citizen of Massachusetts, Plaintiff is a citizen of Massachusetts, and

    b.  Prudential is a foreign insurance company licensed to conduct business in the Commonwealth of Massachusetts and conducts substantial business in this Commonwealth.

13. In conformity with 29 U.S.C. § 1132(h), Plaintiff will promptly serve the First Amended Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## FACTS COMMON TO ALL CAUSES OF ACTION

14. Long-term care insurance typically covers the costs associated with care needs related to assistance with the activities of daily living.

15. Long-term care insurance typically covers services that neither Medicare nor private health insurance covers.

16. Long-term care insurance coverage provides individuals with long-term financial security, and they count on the insurer to describe accurately the process and the commitments it makes and to honor its promises made in the policy.

17. Rate stability is critical when deciding to enroll in a long-term care insurance plan because the insurable event – generally an assisted living facility stay or home health care – is not likely to occur for many years. An insurer promising that premium rates will only increase in the future subject to regulatory approval is thus a critical statement of fact that participants would consider when deciding whether to enroll in a plan, because without that check on premium increases, an insurer could unilaterally raise rates at will.

18. Tufts University offered to its employees a long-term care insurance plan ("Plan") insured by Prudential and governed under ERISA, 29 U.S.C. § 1001, et. seq.

19. A copy of the Plan identified by Group Contract LT-46943-MA is attached as EXHIBIT A at 1-52.

20. A copy of the so-called Summary Plan Description ("SPD") is attached as EXHIBIT A at 53-60.

21. While employed by Tufts University, Plaintiff attended a presentation by Prudential, watched the presentation by Prudential, and then enrolled in the Plan. This presentation assured prospective enrollees that any future premium increases would need to be approved by the Massachusetts Commissioner of Insurance before the increase could become effective.

22. This assurance provided the only security against unchecked premium increases.

23. Prudential even represented in the Plan itself that, "It may increase the premiums you pay subject to the approval of the Massachusetts Commissioner of Insurance." EXHIBIT A at 2.

24. At all times, the Massachusetts Commissioner of Insurance has lacked the regulatory authority to regulate employer sponsored group long-term care insurance rates. For the Commissioner of Insurance to regulate employer sponsored group long-term care insurance rates, the Commissioner of Insurance would need to follow the applicable statutes for adopting regulations allowing for regulating employer sponsored group long-term care insurance rates.

25. Plaintiff paid Prudential premiums for coverage under the Plan for years.

26. Despite the Plan language that represents Prudential would not raise rates without first receiving approval from the Commissioner of Insurance, and despite assurances during the enrollment presentation, Prudential raised premiums without the approval of the Massachusetts Commissioner of Insurance in 2019 and 2020.

27. If Prudential wanted to raise premium rates on the Plan, Prudential had only one option based on the Plan language it chose: wait until the Massachusetts insurance regulations

are changed and the Commissioner of Insurance exercises rate approval authority over employer sponsored group long-term care insurance rates.

28. On January 21, 2019, Prudential mailed a letter to Plaintiff notifying her that the premiums would increase under the Plan by 40% effective May 1, 2019. Plaintiff paid these increased premiums, which were charged to her in violation of the Plan terms.

29. The Massachusetts Commissioner of Insurance did not approve the premium rate increase.

30. This 2019 premium rate increase, and all similar unapproved rate increases nationwide, violate the ERISA welfare-plan terms when the plans state that premiums would only increase after approved by a state insurance commissioner in the state of issuance.

31. In early 2020, in response to a second unapproved rate increase of 19% scheduled to take effect on May 1, 2020, Ms. Parmenter exercised the non-forfeiture feature of her policy to avoid paying future excess premiums. As part of the non-forfeiture benefit, Ms. Parmenter could stop making premium payments but is entitled to a greatly reduced maximum benefit under the Plan. Ms. Parmenter only exercised this option because of the continued rate increases Prudential demanded from her, in violation of her Plan terms, to keep the coverage in force.

32. Plaintiff wanted to continue paying her original premium and keep her original coverage in force, but a future of unchecked premium rate increases made that untenable.

33. Plaintiff has Article III standing to bring this action because she paid premiums to Prudential that were in excess of the premium Prudential was allowed to charge for coverage per the Plan documents. She was also injured when she was forced to exercise her nonforfeiture benefit after learning of the 2020 premium rate increase, thereby greatly reducing the value of her Plan coverage.

34. Ms. Parmenter never would have enrolled in the Plan had she known that Prudential would increase premiums without first receiving regulatory approval, as Prudential promised in both the enrollment presentation and Plan itself.

35. As a result of paying excess premiums that were increased in violation of the Plan terms and later being forced to exercise a non-forfeiture benefit, when all she wanted was to pay the original premiums that were promised, Plaintiff  has suffered harms.

**The Plan and Summary Plan Description Make Clear That Prudential's Setting of Premium Rates is a Fiduciary Function**

36. The first page of the SPD states, "The Summary Plan Description is not part of the Group Insurance Certificate. It has been provided by your Employer and included in your Booklet-Certificate upon the Employer's request." EXHIBIT A at 53.

37. The SPD states, "This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a 'Summary Plan Description' which describes the plan and informs you of your rights under it." EXHIBIT A at 54.

38. The SPD states, "This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s)." EXHIBIT A at 55.

39. The SPD identifies Tufts University as the Plan Sponsor and Plan Administrator. EXHIBIT A at 54.

40. As the named Plan Administrator, Tufts University is a fiduciary under ERISA.

41. The SPD states, "Plan Benefits Provided by The Prudential Insurance Company of America[, ]751 Broad Street[,] Newark[,] New Jersey 07102" EXHIBIT A at 54.

42. The SPD states, "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." EXHIBIT A at 55.

43. The SPD states, "If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial." EXHIBIT A at 55.

44. The SPD states, "If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied… If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial… If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second, voluntary appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied… if the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial." EXHIBIT A at 56.

45. The SPD states, "In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan." EXHIBIT A at 58.

46. Under ERISA (29 U.S.C. § 1002(21)(A)) a person or entity is a fiduciary to the extent that person or entity:

- exercises any discretionary authority or discretionary control with respect to management of the plan or exercises any authority or control with respect to the management or disposition of plan assets;

- renders investment advice for a fee or other compensation, direct or indirect, with respect to any plan assets, or has the authority or responsibility to do so; or

- has any discretionary authority or discretionary responsibility in the administration of the plan.

47. Based on the terms of the Plan, representations in the SPD, and the actions of Prudential, Prudential is a fiduciary under ERISA, because Prudential exercises authority over the Plan; Prudential manages the Plan; Prudential decides who gets paid under the Plan; and Prudential sets the premiums under the Plan.

48. Prudential has de facto control over setting its fees, which are a component of each premium payment made by the Plaintiff and other Plan participants. Prudential is thus acting in a fiduciary capacity.

49. According to the Plan, Prudential has authority to grant or deny claims. Prudential acts as a fiduciary in performing that function.

50. According to the Plan, Prudential has sole authority (subject to the approval of the Commissioner of Insurance) to raise premiums, which is management over plan assets. Prudential acts a fiduciary in performing that function.

51. A person's or entity's failure to act in connection with plan assets over which that person or entity has discretion may not necessarily enable that person or entity to avoid fiduciary status.

52. Prudential issued group long-term care insurance policies nationwide to group policyholders, under various ERISA governed employee benefit plans and promised that

it could only increase premium rates in the future "subject to the approval of the [state of issuance] Commissioner of Insurance." EXHIBIT A at 2.

53. Employers having 100 or more plan participants providing welfare-benefits, including long-term care coverage, must file a form 5500 annually with the United States Department of Labor.

54. Employers having fewer than 100 participants that are fully insured are exempt from form 5500 annual filings.

55. Beginning in 2016 and running to early April 2022, forms 5500 filed with the United States Department of Labor identify approximately one hundred employers, involving thousands of participants in long-term care benefit plans insured or administered or both by Prudential.

56. In several states where Prudential issued group long-term care coverage, including the Commonwealth of Massachusetts, the Commissioner of Insurance has no regulatory rate approval authority over employer sponsored group long-term care insurance, or at least did not during certain time periods when Prudential may have increased rates unilaterally.

57. Prudential, rather than honor its commitment to not raise premiums unless it received approval from the Commissioner of Insurance first, raised premiums in unregulated states regardless of the ERISA plan terms, including the Plan providing benefits to the Plaintiff.

58. Prudential should have waited until the Commissioner of Insurance was provided with regulatory authority over employer sponsored group long-term care insurance rates to seek premium increase requests, instead it unilaterally raised rates without any approval provided, in violation the Plan terms.

**Fiduciaries Must Make Truthful Representations to Participants**

59. Prudential admitted, in writing, to the Massachusetts Commissioner of Insurance, that it made incorrect representations to the participants that the Plan and similar long-term care policies needed advance rate approval from regulators:

   a. "The general guidance provided during a Long Term Care enrollment presentation may reference the typical role a state plays in the regulation of the product and rate. At the time of the Tufts University enrollment, Prudential did not have significant experience with group rate changes."

   b. And "the general guidance provided during the Long Term Care enrollment presentation noted a state's role in the regulation of the product and rate. We apologize that this guidance was not tailored for this specific presentation of Group Long Term Care coverage to be issued in Massachusetts."

60. A state law that regulates insurance is exempt from ERISA's otherwise broad federal preemption sweep. ERISA Section, 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).

61. Massachusetts General Law, Chapter 176D §3(a) prohibits an insurance company from making a statement that "Misrepresents the benefits, advantages, conditions, or terms of any insurance policy," and Massachusetts General Law, Chapter 176D §2 prohibits insurance companies from "engag[ing] in this commonwealth in any trade practice which is defined in this chapter as ... an unfair or deceptive act or practice in this business of insurance."

62. A violation of Massachusetts General Law, Chapter 176D §3(a) is a breach of fiduciary duties under ERISA.

63. Prudential's statements to insureds that it needed regulatory authority to raise premiums was a misrepresentation of material fact in violation of Massachusetts General Law,

Chapter 176D §3(a) (and thus a fiduciary breach under ERISA) when Prudential embarked on its path of raising premiums, without first receiving regulatory authority. Put another way, Prudential's conduct of raising rates without regulatory approval made previous statements false, deceptive and misleading, all of which are fiduciary breaches under ERISA.

64. Representing to insureds that premiums will only increase subject to regulatory approval at the time of enrollment, but then increasing premiums years later without such regulatory approval, is an unfair and deceptive act in the business of insurance.

65. ERISA fiduciaries may not make material misrepresentations to plan participants.

66. Plaintiff and the Class are entitled to various forms of relief due to the fiduciary breaches committed by Prudential.

## **CLASS ALLEGATIONS**

67. Plaintiff seeks certification of the following class under F.R.C.P 23(b)(1), (b)(2) and (b)(3):

> "Class": All former or current Prudential ERISA governed group long-term care insurance certificate holders, who (1) were issued coverage under a group long-term care policy which states premium rate increases will only be permitted if first approved by their home state insurance regulator and (2) who were issued their certificate of coverage in a state where group long- term care insurance rates were unregulated at the time of a premium rate increase instituted by Prudential.

68. The requirements for certification of a class under F.R.C.P 23(b)(1), (b)(2) and (b)(3) have been met.

69. Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Here, the Tufts' Plan alone has more than one hundred participants thus satisfying numerosity.

70. Rule 23(a)(2) requires that there be questions of law or fact that are common to the Class. Here the questions include, but are not limited to:

- Did Defendants violate the terms of the Plan and similar insured plans when they increased premium rates without first receiving approval from the governing insurance regulator?

- Did Defendants breach their duties as an ERISA fiduciary when increasing premium rates without regulatory approval even though the Plan documents and the enrollment presentations promised that regulatory approval was necessary to increase premiums?

71. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like Plaintiff, the Class members have all suffered "the same or similar injury": they all had their premium rates increased even though the rates increases were not approved by the applicable regulator in violation of their plan terms. This common injury springs from the same "uniform course of conduct," namely: Prudential is increasing premium rates even in states where group rates are unregulated and no regulatory approval has been received, in violation of plan terms.

72. Rule 23(a) requires that Plaintiffs demonstrate that they will fairly and adequately protect the interests of the Class. Plaintiffs' interests are co-extensive and do not conflict with the proposed Class members' interests and are typical of the claims of the other Class members. Plaintiffs have an interest in vigorously prosecuting this case on behalf of the proposed Class because they seek to prevent Defendants' practice of increasing premiums when they have received no rate approval authority to do so. This explicitly advances the interests of the Class in lockstep. Likewise, undersigned Class Counsel selected by Plaintiff will vigorously prosecute this action on behalf of the Class. Class

Counsel has significant experience in ERISA governed insurance litigation and insurance focused consumer class litigation.

73. A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). This action challenges whether Prudential acted consistently with its fiduciary duties or otherwise violated ERISA. If the Class members were to file separate lawsuits all over the country seeking relief, some courts may tell Prudential it violated ERISA and the policy terms and order an injunction or other relief whereas other courts could potentially find Prudential's conduct permissible. Pursuit of similar claims for systemic reform through multiple individual suits would not only be inefficient, but separate suits would create a risk that different courts might order divergent or even conflicting relief.

74. Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find Defendants' practices require Prudential to act in a certain fashion, ERISA would require Prudential act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario.

75. A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…"

Fed.R.Civ.P. 23(b)(2). Plaintiffs and the Class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Prudential an order that Prudential stop increasing premium rates where it is given no regulatory approval to do so when their policies explicitly require such advance approval before premiums can be increased.

76. A class action is appropriate under Rule 23(b)(3), because a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large corporation such as Prudential. Further, neither Plaintiff nor her counsel are aware of any other on-going class litigation concerning this controversy. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.

77.  A proposed class is ascertainable if it is well-defined and membership turns on objective criteria. Plaintiffs have identified the specific "objective criteria" here as the policy terms common to all Class members regarding regulatory approval of group long-term care insurance premium rate increases.

78.  A class action is a superior method to other available methods for the fair and efficient adjudication of this action. A single proceeding rather than multiple proceedings will efficiently resolve the issues in this litigation. The amount to be recovered by individual Class members is small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for

unduly duplicative litigation which might result in inconsistent judgments about
Defendants' duties and liability regarding the Plans.

79. The following factors set forth in Rule 23(b)(3) also favor certification of this case as a
class action:

    a.  The members of the Class have an interest in a unitary adjudication of the issues
presented in this action for the reasons that this case should be certified under
Rule 23(b)(1).

    b.  No other litigation concerning this controversy has been filed by any other
members of the Class.

    c.  This District is a desirable location for concentrating the litigation because for
reasons that include (but are not limited to) the following: (i) Tufts University is
headquartered in this District, (ii) the Plan in which Plaintiff participated is
administered in this District, (iii) Prudential issues group long-term care insurance
policies in most of the United States, and there is no one District that is
convenient to most Class Members.

    d.  There are no difficulties in managing this action as a class action.


## FIRST CAUSE OF ACTION
### (Claim for Appropriate Equitable Relief under 29 U.S.C. §1132(a)(3), ERISA Section 502(a)(3))

80. Plaintiffs restate and reallege all prior paragraphs.

81. Plaintiffs and the Class are entitled to declaratory judgment and other equitable relief
provided for under Section 502(a)(3) of ERISA, including reformation, surcharge,
disgorgement and other equitable remedies from Defendants.

82. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to
bring a civil action to: "(A) enjoin any act or practice which violates any provision of this

16

title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

83. Massachusetts General Law, Chapter 176D §3(a) prohibits an insurance company from making a statement that "Misrepresents the benefits, advantages, conditions, or terms of any insurance policy," and Massachusetts General Law, Chapter 176D §2 prohibits insurance companies from "engag[ing] in this commonwealth in any trade practice which is defined in this chapter as ... an unfair or deceptive act or practice in this business of insurance." A violation of Massachusetts General Law, Chapter 176D §3(a) is a violation of ERISA and gives rise to a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

84. Representing to the Plaintiff in both an enrollment presentation and the Plan document that Prudential would not raise premiums without the approval of the Massachusetts Commissioner of Insurance, while knowing that Massachusetts did not regulate premiums for employer sponsored group long-term care insurance plans, was a material misrepresentation of fact once Prudential increased premiums.

85. Raising premiums without the approval of the Massachusetts Commissioner of Insurance, as was required under the Plan terms, and as was promised during enrollment presentations are fiduciary breaches in violation of ERISA and a violation of Massachusetts General Law, Chapter 176D §3(a).

86. Due to the fiduciary breaches perpetrated by Prudential, namely increasing group insurance premiums in violation of the Plan terms and in contradiction of enrollment presentations, Plaintiff and the Class are entitled to other equitable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) from Defendants.

87. "Making intentional representations about the future of plan benefits in that context is an act of plan administration." *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996)

88. An ERISA administrator may not make affirmative material misrepresentations to plan participants about changes to an employee benefit plan.

89. An ERISA administrator must speak truthfully to plan participants.

90. Tufts, as a co-fiduciary, did not take actions to prevent Prudential from raising premiums and breached its fiduciary duties to the participants by failing to monitor Prudential.

91. Inequitable conduct includes equitable fraud, negligent omissions, and concealments of true facts.

92. Prudential engaged in inequitable conduct by raising premiums in violation of its representation that it would only "increase the premiums you pay subject to the approval of the Massachusetts Commissioner of Insurance."

93. Prudential engaged in inequitable conduct or breached its fiduciary duties, or both, that justifies reformation of the terms of its Plan, by enforcing the representation that it would only raise premiums after first approved by the Massachusetts Commissioner of Insurance.

94. By receiving and retaining premiums for which it had not been granted approval by the Massachusetts Commissioner of Insurance, Prudential engaged in inequitable conduct or breached its fiduciary duties, or both, and violated ERISA in a manner that justifies reformation of the terms of the Plan and justifies disgorging monies received that it was not entitled.

95.  Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), make-whole remedies do not require Plaintiff to show detrimental reliance on misrepresentations by a fiduciary or other responsible party.

96. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), reformation is available due to a mutual mistake of fact or inequitable conduct to remedy false or misleading information.

97. Reformation is also available to remedy violations of ERISA even in the absence of mistake, fraud or other conduct traditionally considered to be inequitable.

98. Reformation applies to remedy breaches and violations even when there is no actual harm.

99. Appropriate reformation includes striking any language in the Plan that may suggest premiums may be increased without the applicable state Commissioner of Insurance.

100.  Under ERISA detrimental reliance need not be proven in each instance to achieve make-whole relief, including reformation or surcharge.

101.  Plaintiff and the Class members seek this Court's order that they are entitled to appropriate equitable relief under 29 U.S.C. §1132(a)(3) from Defendants, including injunctive relief prohibiting past and future violations of ERISA relating to ERISA instruments; reformation of ERISA instruments drafted by Prudential to the degree plan/policy language violates ERISA; disgorgement of increased premiums received for which Prudential did not first secure state insurance regulatory approval; and all other make-whole equitable relief, including surcharging Prudential for taking unlawful premiums from the Plaintiff and the Class and profits earned on those unlawful premiums.

## SECOND CAUSE OF ACTION
### (Action to clarify rights under the Plan 29 U.S.C. §1132(a)(1)(B), ERISA Section 502(a)(1)(B))

102.  Plaintiffs restate and reallege all prior paragraphs.

103.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) authorizes a participant or beneficiary to bring a civil action "to enforce [her] rights under the terms of the plan…"

104.  Relief under this section provides for declaratory relief enjoining Defendants from breaching the Plan terms and providing for all relief allowed under § 1132(a)(1)(B).

105.  Plaintiff is entitled to relief enjoining Prudential from raising premiums again, until such time that state regulatory approval is granted by the appropriate state regulator allowing a premium rate increase.

### THIRD CAUSE OF ACTION
**(Award of attorneys' fees and costs under 29 U.S.C. § 1132 (g)(1), ERISA Section 502(g)(1))**

106.   Plaintiffs restate and reallege all prior paragraphs.

107.  As a result of Defendants' acts and omissions, Plaintiff and the Class are entitled to recover under ERISA Section 502(g)(1), 29 U.S.C. § 1132 (g)(1), costs of this litigation, including reasonable attorneys' fees costs and interest as allowed by law from Defendants.

### REQUESTED RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative Class, pray for judgment against Defendants as follows:

A.  For an Order certifying the proposed Class under F.R.C P. 23(b)(1), (b)(2), and (b)(3).

B.  Declaring that Prudential breached its fiduciary duties by collecting, receiving and retaining premiums without having secured approval from the Massachusetts Commissioner of Insurance or other Class Members home insurance regulating authority as applicable.

C.  Enjoining Prudential from collecting, receiving and retaining excess premiums in violation of the Plan until such time that regulators approve of rate increases.

D.  Provide Class Members who lapsed their coverage and/or exercised a nonforfeiture benefit in response to the illegal rate increases to reinstate their original coverage.

E.  Imposing a surcharge on Prudential;

F.   Requiring Prudential to disgorge any profits that it earned on premiums wrongfully received and retained.

G.   Award pre-judgment and post-judgment interest at no less than the Massachusetts statutory rate.

H.   Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class.

I.   Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

J.   For such further relief as the Court deems equitable in the case.


Dated: April 25, 2022                                   THE PLAINTIFF, BY HER
                                                        ATTORNEYS,

                                                        /s/ Sean K. Collins
                                                        _____

                                                        Sean K. Collins
                                                        B.B.O. # 687158
                                                        Law Offices of Sean K. Collins
                                                        184 High Street, Suite 503
                                                        Boston, MA 02110
                                                        Tel.: 855-693-9256
                                                        Fax: 617-227-2843
                                                        sean@neinsurancelaw.com

                                                        Jonathan M. Feigenbaum
                                                        B.B.O. #546686
                                                        Law Offices of Jonathan M.
                                                        Feigenbaum
                                                        184 High Street, Suite 503
                                                        Boston, MA 02110

Tel.: 617-357-9700
Fax: 617-227-2843
jonathan@erisaattorneys.com

Ex Kano S. Sams II
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
esams@glancylaw.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

    I hereby certify that on the date below my signature, a copy of the foregoing was electronically filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. Parties not registered with the Court's electronic filing system will be served this same day by First Class U.S. Mail.

/s/Sean K. Collins
Dated: April 25, 2022