UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10079-RGS

BARBARA M. PARMENTER, individually and
on behalf of all others similarly situated

v.

THE PRDUENTIAL INSURANCE COMPANY OF AMERICA
and DOES 1-50

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

August 22, 2024

STEARNS, D.J.

This case involves increases to insurance premiums for seven group long-term care insurance plans (the Plans) sold by the Prudential Insurance Company of America. Under the terms of the Plans, the premium increases were said to be "subject to the approval of the Massachusetts Commissioner of Insurance." First Am. Compl. (FAC) (Dkt. # 22) ¶ 23. The Commissioner has had the authority to regulate employment-based group long-term insurance policies, including premium increases for these policies, since January of 2013, but he has never chosen to exercise it. *See* Mass. Gen. Laws ch. 176U, § 7; 211 Mass. Code Regs. § 65.02. Thus, when Prudential twice

increased premiums under the Plans – first by 40% and later by another 19% – it did so without first obtaining the Commissioner's approval.[1]

Parmenter then sued on behalf of a putative class of insureds, alleging that Prudential breached its fiduciary duties to policyholders in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Parmenter maintains that the "subject to" clause in the Plans required Prudential to receive approval from the Commissioner before increasing premiums and that Prudential's failure to do so was a breach of its fiduciary duties. Prudential disputes this, interpreting the clause to mean that if, at some future point, the Commissioner decides to regulate rates, Prudential will seek Commissioner approval before increasing premiums.

Parmenter now moves to certify the case as a class action and proceed with two overlapping classes: a damages class pursuant to Rule 23(b)(3)

---

[1] The First Amended Complaint (FAC) alleges ERISA violations only with respect to premium increases on a Tufts University group plan. Prudential levied the 40% premium increase on the Tufts Plan in 2019 and the 19% increase in 2020. It appears that through discovery, the class has expanded to include individuals insured by six additional Plans for the following employer groups in Massachusetts: Bingham McCutchen LLP, Cognex, DentaQuest, Digitas, Dunkin Brands Inc., and Saint-Gobain Corporation. The initial premium increases for the additional Plans occurred between 2018 and 2021. *See* Prudential Ins. Co. of Am.'s Opp'n to Pl.'s Mot. for Class Certification (Opp'n) (Dkt. # 76) at 7. The second premium increases occurred between 2019 and 2023. *See* Decl. of Sean K. Collins in Supp. of Pl.'s Mot. for Class Certification, Exs. O-U (Dkt. ## 75-15 – 75-21).

(Damages Class), and an injunctive relief class pursuant to Rule 23(b)(2) (Injunctive Class).  The proposed Classes consist of current and former holders of any of the Plans whose certificates were issued in Massachusetts and who had insurance coverage when Prudential increased premiums in 2018.  The prospective Damages Class members continued to hold their policy after at least one of the premium increases (and thus paid higher premiums), and the prospective Injunctive Class members abandoned their policies or reduced coverage after one of the premium increases.  For the reasons that follow, the court will deny Parmenter's motion.

## DISCUSSION

The court may certify the Classes only if Parmenter has established the familiar requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and has shown that "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  For the Damages Class, Rule 23(b)(3) requires Parmenter to show that (1) questions of law or fact common to the class members predominate over questions relevant to only individual members, and (2) a class action is the superior method of litigating the claims.  Fed. R. Civ. P. 23(b)(3).  For the Injunctive Class, she must show that

3

Prudential "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).

Rule 23 does not prescribe a pleading standard; rather, it is Parmenter's burden to adduce evidence "affirmatively demonstrat[ing]" that she satisfies Rule 23's requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To assess whether her proof passes muster, the court conducts a "rigorous analysis," which often requires some consideration of the merits. *Wal-Mart*, 564 U.S. at 350-351, quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982). This does not mean that the court should (or can) resolve at this stage which side's interpretation of the "subject to" clause wins the day. The court need only determine whether the clause can be interpreted uniformly on a class-wide basis. With this in mind, after considering the evidentiary proof put forward by Parmenter, of which there is little, the court finds that she has failed to demonstrate commonality.

Parmenter claims that the Classes share an "obvious" common question: "based on the 'subject to' language in Prudential's standardized insurance policies, can Prudential increase rates without first securing approval from the Massachusetts Commissioner of Insurance?" Pl.'s Mem. of Law in Supp. of Mot. for Class Certification (Dkt. # 75) at 7. No doubt, this

4

is a (if not the) central question in dispute. But "what really 'matters to class certification . . . is not the raising of common questions' as much as 'the capacity of a classwide proceeding to generate common *answers* apt to drive resolution of the litigation.'" *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019), quoting *Wal-Mart*, 564 U.S. at 350 (alteration in original). That is, the "determination of [the common issue's] truth or falsity" must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Given the First Circuit's finding that the "subject to" clause is ambiguous, *see Parmenter v. Prudential Ins. Co. of Am.*, 93 F.4th 13, 22-23 (1st Cir. 2024), the question cannot be answered universally for the classes.

Where the "plain meaning of a contract phrase does not spring unambiguously from the page or from the context," the factfinder must "ferret out the intent of the parties." *RCI N.E. Servs. Div. v. Bos. Edison Co.*, 822 F.2d 199, 202 (1st Cir. 1987). Determining the parties' intent often involves examining extrinsic evidence and any "reasonable inferences extractable therefrom." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). The First Circuit identified several sources of extrinsic evidence that bear on the meaning of the "subject to" clause here: "when the terms of the group contract were first drafted, whether the terms

5

existed prior to 2013 and, if so, whether the contract was subsequently amended after the Massachusetts Legislature passed chapter 176U, § 7 to allow for a Commissioner-imposed approval process" and "when Parmenter first joined the policy and therefore agreed to the terms of the insurance policy applicable to her." *Parmenter*, 93 F.4th at 24.

Parmenter has not identified any of this extrinsic evidence here. This failure alone dooms her motion because she has not shown that the identified common question will result in a common answer. And it is difficult to imagine that the evidence, if presented, could result in a common answer.[2] Different employer sponsors negotiated the Plans at different times. *See* Opp'n at 6-7. The different sponsors very well may have had distinct views on the meaning of the "subject to" clause, and evidence about the negotiations between each sponsor and Prudential could also lead to varying

---

[2] Parmenter repeatedly attempts to shift the burden to Prudential, arguing that Prudential's opposition brief "was its opportunity to present evidence showing that this matter should not be managed as a certified class action." Reply at 2 (emphasis omitted). While it is true that the court "must not rely on mere speculation that individual issues may arise" in deciding class certification, *see Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021), Parmenter has the initial burden of showing, with evidentiary proof, that the matter is capable of class-wide resolution. She has plainly not done so. And even if she had, Prudential would not need to produce evidence to the contrary. Its burden is to show that "there is more than speculation that individual issues . . . may arise" and that the individual issues cannot "be culled from the class in a way that is administratively feasible and protective of [Prudential's] due process rights." *Id.* at 89.

6

interpretations of the clause.[3] *See Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15, 19-20 (1st Cir. 2004). Although each Plan contains the "subject to" clause, other Plan terms differ. *See* Opp'n at 6-7. As ambiguous contractual terms must be interpreted by considering the terms "within the context of the contract as a whole," *see Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 31 (1st Cir. 2022), differences in terms between the seven Plans, or the same Plan at different times, could change the meaning of the "subject to" clause. The factfinder would thus also need to consider when each class member first joined the respective Plan to determine what terms each member agreed to and to assess what each insured understood the clause to mean.[4]

---

[3] Prudential's intent is likely less significant in resolving the ambiguity because group insurance policies are adhesive contracts, so ambiguous terms are generally resolved in favor of the insured. *See Ministeri v. Reliance Stand. Life Ins. Co.*, 42 F.4th 14, 23 (1st Cir. 2022). But because an insurer may "overcome th[e] presumption with probative evidence," Prudential's intent may well be relevant and may differ from Plan to Plan. *Hughes v. Bos. Mut. Life Ins. Co.*, 26 F.3d 264, 270 n.6 (1st Cir. 1994).

[4] As she fails to establish Rule 23(a)'s "more basic" commonality requirement, it follows that Parmenter also fails to establish Rule 23(b)(3)'s similar but more demanding predominance prong for the Damages Class. *See Comcast*, 569 U.S. at 34; *see also Aronstein v. Mass. Mut. Life Ins. Co.*, 15 F.4th 527, 534-535 (affirming denial of class certification where need for extrinsic evidence to interpret ambiguous contract "would destroy predominance over common questions of fact and law").

The identified individual issues are not merely speculative. The central dispute in this case can only be resolved by examining extrinsic evidence that is necessarily individualized in nature. Parmenter relies on conjecture alone to suggest that the clause can be interpreted uniformly. But once one looks past this *ipse dixit*, they are left with nearly no evidentiary proof or legal basis to suggest that an ambiguous clause in seven different contracts – contracts that contain different terms and were negotiated by different people at unknown points in time – can be interpreted homogenously. The court therefore cannot certify the Classes.

## ORDER

Parmenter's motion for class certification is DENIED.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE